UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 15 CR 50017 |
| | ) | Judge Iain D. Johnston |
| Anthony Ross, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Anthony Ross has filed a motion under the First Step Act seeking a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his risk of complications from COVID-19 because of multiple medical conditions. For the reasons that follow, Mr. Ross' motion [58] and [63] is denied.

## BACKGROUND

Mr. Ross pleaded guilty to one count of possession with intent to distribute heroin, cocaine, and cocaine base, *see* 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking offense, *see* 18 U.S.C. § 924(c)(1)(A). According to the Presentence Investigation Report, Mr. Ross' offense involved 219.8 grams of heroin, 1.2 kilograms of cocaine, 92 grams of cocaine base, and possession of two loaded semi-automatic handguns, one of them stolen. Dkt. 37 at 7-8. United States District Judge Kapala, who has since taken inactive senior status, sentenced Mr. Ross to a total of 135 months' incarceration. Dkt. 52. That sentence consisted of 75 months on Count I, which was within his Guidelines range of 70 to 87 months for that count, plus the mandatory minimum 60 month sentence on the firearm count, which by statute must be served consecutively. *Id.* Mr. Ross did not appeal. He has served over half of his sentence (taking into account good time credits), and his projected release date is January 27, 2025. Dkt. 58 at 2.

Mr. Ross now seeks relief under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A)(i). He contends that several medical conditions put him at greater risk of developing serious complications should he contract COVID-19, and therefore provide an extraordinary and compelling reason to grant compassionate release.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons," and must take into account the sentencing factors set out at 18 U.S.C. § 3553(a). The defendant bears the burden of establishing that he or she is entitled to

compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion, a defendant must first ask his warden to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). It is undisputed that Mr. Ross exhausted his administrative remedies before filing his motion under the First Step Act. Dkt. 64 at 11.

The Court prefaces its analysis of Mr. Ross' arguments with the recognition that it, as well as the rest of the world, is still learning about the virus and therefore, is making its best judgments based upon the information that is currently available. *See, e.g., Cassell, et al., v. Snyders*, No. 20-1757, at 15 (7th Cir. Mar. 8, 2021) ("Governments and citizens thus have been forced to act with imperfect knowledge."). According to Mr. Ross' motion, he suffers from several conditions that put him at increased risk of severe illness from the virus that causes COVID-19. Specifically, he contends that his obesity, high blood pressure, and sleep apnea all create an increased risk. Dkt. 63 at 3-4. He contends that as an African-American, he is also at an increased risk because of long-standing systemic health and social inequities such as dense living conditions, the ability to socially distance, access to health care, and a greater likelihood of underlying health conditions. *Id.* at 10. Mr. Ross notes that he also suffers from post-traumatic stress disorder, sciatica and arthritis, though he does not claim those conditions increase his risk. *Id.* The government responds that Mr. Ross' medical records contain no diagnosis of sleep apnea, and that his contention that he suffers from high blood pressure is based on a single reading taken on December 28, 2020. Dkt. 64 at 11-12. It does not address his contention that being African-American increases his risk of exposure to, and serious illness from, COVID-19. But as the Seventh Circuit recently recognized, risks stemming from societal living and working conditions does not provide a factual foundation for concluding that African-American inmates are at a higher risk of severe COVID-19 complications. *See United States v. Joiner*, No. 20-2361, -- F.3d --, 2021 U.S. App. LEXIS 5229, at *4-6 (7th Cir. Feb. 23, 2021). In any event, the Court need not resolve whether his being African-American or most of the other conditions he alleges increase his risk because the government concedes that Mr. Ross faces a greater risk of complications because of his morbid obesity alone. Based on that concession, which is consistent with CDC guidelines[1], the Court concludes that Mr. Ross does suffer a condition that places him at an increased risk of severe illness from the virus that causes COVID-19.

However, that does not end the Court's inquiry. In exercising its discretion, a court may take into consideration the state of the pandemic and an institution's efforts to contain it. *See United States v. Young*, 834 Fed. Appx. 268, 269-70 (7th Cir. 2021). According to Mr. Ross, the statistics "speak for themselves regarding BOP's inability to curb the spread of the virus." *Id.* Those statistics include that the first inmate was infected on March 20, 2020, and within sixteen days the number of infected grew to 196, to 2,338 infected by May 18, 2020, and to nearly 45,000 by January 2021. Dkt. 63 at 9. Mr. Ross also contends that as of August 2020, 8.6% of all BOP inmates had been infected, as of October 2020 17% of all inmates at Oxford had been infected, and that FCI Oxford is "currently experiencing a severe outbreak of COVID-19 cases." *Id.* at 9-10. He also notes that the conditions at Oxford make it impossible to follow CDC guidelines – social distancing is impossible, inmates must share just two bathrooms which are

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 3/11/2021).

often filthy and lack soap, and inmates and staff rarely wear masks. Mr. Ross merely asserts these conditions in his brief, without a supporting affidavit, and does not quantify the number of inmates infected during the "severe outbreak" he describes in his brief filed in early February 2021. But today Oxford reports just 2 current infections among inmates and none among staff, and so the BOP's efforts to contain outbreaks at Oxford appear to be successful, despite the conditions Mr. Ross describes. *See* https://www.bop.gov/coronavirus/index.jsp (last visited 3/11/2021).[2] Although the BOP's website does not report how many, if any, inmates and staff have been fully vaccinated at Oxford, the BOP reports that systemwide it has administered 71,919 doses of the vaccine, and will continue to administer more as it is allocated additional shipments. *Id.* Mr. Ross has provided no evidence that he has requested to be vaccinated but was denied the vaccine. Moreover, Mr. Ross acknowledges that he has already tested positive for COVID-19 yet was asymptomatic. Mr. Ross discounts the result as a false positive because it was a "rapid PCR RNA test" which he contends are "inaccurate" and "unreliable." Dkt. 63 at 4. But he points to no research or other evidence supporting his contention that his result was false, or that a significant number of such results are false. He also contends that COVID-19 variants present new risks as they begin to take root across the country. But he does not explain or refer to reports explaining why the measures BOP has put into place that curtailed the current spread would be inadequate to curtail the spread of emerging variants.

In summary, the Court concludes that although the COVID-19 pandemic continues and Mr. Ross' obesity is among the conditions that increases his risk of a serious illness from COVID-19, he appears to have remained symptom free during an earlier infection, and the BOP has demonstrated its ability to contain the spread of the virus from what Mr. Ross describes as a severe outbreak of COVID-19 just weeks ago to just 2 cases today. As a result, he has not identified an extraordinary and compelling reason for reducing his sentence under the First Step Act.

But even if he had, the Court's review of the sentencing factors set out in 18 U.S.C. § 3553(a) would still not favor any reduction. Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from future crimes by the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). To those ends, the court must consider the following factors:

---

[2] The website does not distinguish between FCI Oxford and the Camp at Oxford, which is where Mr. Ross contends he is housed. According to the BOP's inmate locator, Mr. Ross is housed at FCI Oxford, and so the Court will assume that the BOP's statistics given for FCI Oxford include the Camp. But even if the current 2 cases are from just the FCI, that is where Mr. Ross contends the severe outbreak was raging just weeks ago, and so it demonstrates a notable containment of the spread of the virus.

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

          . . .

    (3)    the kinds of sentence available;
    (4)    the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
    (5)    any pertinent policy statement [in the Sentencing Guidelines];
    (6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

      Mr. Ross' offenses were very serious because they involved significant quantities of multiple types of drugs in multiple locations, as well as the possession of two loaded weapons—one of which was stolen—in furtherance of his drug offense. He intended to financially profit from the addictions of others, spread the scourge of drugs within the Rockford community, and was willing to risk the violence that can accompany the presence of firearms possessed in furtherance of criminal objectives.

      The Court acknowledges that Mr. Ross' offense followed nearly 11 years spent incarcerated for a murder conviction subsequently overturned. But this offense is not his only other criminal conduct. Despite a criminal history score of zero reported in his Presentence Investigation Report, this does not accurately reflect his true criminal history. (Just as occasionally a high criminal history category overstates a person's criminal history, likewise, occasionally, a low criminal history score understates a person's true criminal history.) He was convicted of numerous previous offenses dating back to age 13, including prior drug offenses. Dkt. 37. He also has a history of violating the conditions of his probation and parole. The Court notes this criminal history not because it should have factored into the computation of his advisory Guidelines range, but because it is among the evidence of his history and characteristics.

      In addition to evidence that was available to the sentencing judge, this Court is also able to take into account evidence of Mr. Ross' post-sentencing history and characteristics. The Court commends Mr. Ross for his efforts to rehabilitate himself, including completing numerous courses, obtaining his GED, and working as a driver, a position in which he has been entrusted to transport other inmates to their jobs outside the Camp. The Court has reviewed his many certificates of achievement and is impressed with his accomplishments. His hard work and dedication will serve him well upon his release and reintegration into society. The Court also considers his post-release plans, which include living in Arizona with his mother, and using proceeds from the settlement of his civil lawsuit to expand his real estate and trucking businesses.

But on balance, considering both his current accomplishments as well as his history and characteristics and the serious nature of his offense, the Court is not convinced by Mr. Ross' assertions that should be released or confined at home because he presents no risk of recidivism and poses no danger to the community. His prior periods in custody (excluding his time spent imprisoned on the conviction that was overturned) did not deter him from committing additional offenses. He contends that support from friends and family, including living with his mother upon his release, will provide the emotional and moral support to ensure that he "does not stray from the path of becoming a productive member of society." Dkt. 63 at 25. But the Court notes that he was living with his aunt when he committed the instant offenses. As a result, even if Mr. Ross had established an extraordinary and compelling reason for reducing his sentence under the First Step Act, the Court's review of the sentencing factors would not leave it inclined to grant a reduction.

## CONCLUSION

Because Mr. Ross has not established an extraordinary and compelling reason to grant him relief, and because even if he had balancing the § 3553(a) factors would not favor his immediate release, Mr. Ross' motion [58] and [63] for a sentence reduction under the First Step Act is denied.

Date: March 11, 2021        By: _____
                                Iain D. Johnston
                                United States District Judge